**Todd M. Friedman (216752)**
**Nicholas J. Bontrager (252114)**
**Suren N. Weerasuriya (278512)**
**Law Offices of Todd M. Friedman, P.C.**
**324 S. Beverly Dr. #725**
**Beverly Hills, CA 90211**
**Phone: 877-206-4741**
**Fax: 866-633-0228**
**tfriedman@attorneysforconsumers.com**
**nbontrager@attorneysforconsumers.com**
**sweerasuriya@attorneysforconsumers.com**
**Attorney for Plaintiff**

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOAN BENEDICT,** | Case No. **8:14-cv-00770-AG-DFM** |
| Plaintiff, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| **WELLS FARGO BANK, N.A.,** | |
| Defendant. | Date: June 30, 2014 |
| | Time: 10:00am |
| | Courtroom: 10D |

NOW COMES the Plaintiff, JOAN BENEDICT, by and through her attorneys, Law Offices of Todd M. Friedman, P.C., and hereby submits the following written opposition in response to Defendant, WELLS FARGO BANK, N.A.'s, Motion to Dismiss the First Amended Complaint filed in the present matter. Plaintiff's opposition is based upon the authority and arguments contained and attached hereto as well as all pleadings and other documents on file.

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………...3

II.   ARGUMENT………………………………………….………3

    A.    Legal Standard………………………………………………3

    B.    The Rosenthal Act Applies to Mortgage Debts………………5

    C.    Plaintiff's Rosenthal Act Cause of Action is Well Plead…...…9

    D.    The CLRA Applies to Mortgages……………………………12

    E.    Plaintiff's CLRA Cause of Action is Well Plead…………..…16

    F.    Plaintiff's IIED and NIED Causes of Action are Well Plead….17

    G.    Defendant Does Owe a Duty of Care to Plaintiff………………18

    H.    Plaintiff's EFTA Cause of Action is Well Plead and the Statute of Limitations Has Not Expired…………………………......21

    I.    Defendant Failed to Comply with Local Rule 7-3 and Its Motion Should be Denied for Such Failure……………………….…23

III.  CONCLUSION……………………………………………....25

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

On or about December 6, 2013, Plaintiff, JOAN BENEDICT ("Plaintiff"), filed her Complaint against the Defendant, WELLS FARGO BANK, N.A. ("Defendant"), in the Superior Court of California for the County of Orange. Plaintiff alleged in her Complaint that the Defendant engaged in conduct in violation of the California Rosenthal Fair Debt Collection Practices Act (RFDCPA), Cal. Civ. § 1788 et seq., the Consumer Legal Remedies Act, Cal. Civ. § 1750, et seq., committed Intentional Infliction of Emotional Distress and also Negligent Infliction of Emotional Distress.  On April 17, 2014, Plaintiff filed her First Amended Complaint adding an additional claim for violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, et seq.

On or about May 16, 2014, Defendant, through counsel, removed the instant matter to this Honorable Court.  On or about May 23, 2014, Defendant filed a Motion to Dismiss Plaintiff's Complaint pursuant to *Fed. R. Civ. 12(b)(6)* for failure to state a sufficient claim for which relief can be granted.  Defendant moves this Honorable Court for dismissal based upon the false and erroneous position that Plaintiff's Complaint does not allege sufficient facts to put the Defendant on notice as to the basis for Plaintiff's claims.  For the reasons discussed below, Defendant is incorrect in its legal and factual analysis and this Honorable Court would be justified in denying Defendant's motion.

## II.   ARGUMENT

### A.   Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*,

551 U.S. 89, 93 (2007), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Fair notice is given when a complaint contains, "sufficient matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quotiting Twombly at 570.

"In a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the burden falls on the defendant to prove that the complaint fails to state a claim upon which relief can be granted. All factual uncertainties in the complaint must be construed in the light most favorable to the plaintiff. *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir.1996). The Court will dismiss only those claims for which it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. *Wyler Summit Partnership v. Turner Broadcasting Sys., Inc.,* 135 F.3d 658, 661 (9th Cir.1998). *Medialdea v. Law Office of Evan L. Loeffler PLLC,* 2009 WL 1767185, Pg. 1 (W.D.Wash.,2009).

Further, "the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). In general, the Complaint is construed favorably to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *Watts v. Allstate Indem. Co*., 2009 WL 1905047, Pg. 3 (E.D. CA 2009).Defendant has failed to meet its burden in the present matter. Plaintiffs' Complaint clearly and effectively informs the Defendant of the conduct to which Plaintiffs complain of as well as clearly and concisely informs the Defendant under what legal theories Plaintiffs seek relief.

**B.     The Rosenthal Act Applies to Mortgage Debts**

Defendant moves to dismiss Plaintiff's RFDCPA claim based upon the erroneous argument that mortgage debts are outside the scope of the RFDCPA. As discussed in this opposition below, this is an inaccurate statement of law.  In support of its misstatement of the applicable law in this regard, Defendant goes on to cite to several cases which hold only that ***foreclosure on a property on a deed of trust is not the collection of a debt.***  Here, under her cause of action for violation of the RFDCPA, Plaintiff alleges that Defendant is attempting to collect a consumer debt arising out of a consumer credit transaction.  Whether or not that consumer debt was secured by real property is completely irrelevant for purposes of ascertaining whether it is consumer debt, notwithstanding Defendant's painstaking effort to concoct a rule which states that collection attempts on consumer debt arising out a credit consumer transaction that is secured by real property is not subject to the RFDPCA, whether or not it relates to foreclosure activity.  No such rule exists, and no California court has *ever* held as much or endorsed this proposition as a matter of law.

A cursory review of the statute itself, the relevant case law, and the irrelevant case law cited by Defendant reveals exactly this.  Under the Rosenthal Act, the term "consumer debt" is defined as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(4). A "consumer credit transaction" means "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person *primarily for personal, family, or household purposes."* Cal. Civ. Code § 1788.2(e) (emphasis added).  Plaintiff alleges as much here, and her pleading in this regard is satisfactory.

In the case of *Ohlendorf v. American Home Mortg. Servicing,* 279 F.R.D. 575 (E.D. Cal. 2010) the Eastern District Court specifically rejected the argument that Defendant is making in the instant motion to dismiss.  The plaintiff in *Ohlendorf* argued that the defendant had violated the RFDCPA in making false representations in collecting on a debt that arose out of foreclosure.   The defendant also argued as the Defendant in this case does and the Court rejected that argument as follows:

> AHMSI correctly points out that foreclosure on a property securing a debt is not debt collection activity encompassed by Rosenthal Act. Cal. Civ.Code § 2924(b), *Izenberg v. ETS Services, LLC,* 589 F.Supp.2d 1193, 1199 (C.D.Cal.2008).   However,  plaintiff's allegations with respect to this cause of action ***do not mention foreclosure, instead alleging violations related to payment collection efforts.*** *See Champlaie v. BAC Home Loans Servicing, LP,* 706 F.Supp.2d 1029, 1054–55 (E.D.Cal.2009). Further, the actions of debt collectors under the act are not immunized if plaintiff actually owed money. Rather, the Rosenthal Act prohibits ***conduct in collecting a debt***, whether valid or not. Accordingly, AHMSI's second argument is without merit.

*Ohlendorf,* 279 F.R.D. at 582 (emphasis added).

In the instant case, the Plaintiff has alleged that Defendant committed similar conduct to the party in *Ohlendorf,* and the Court specifically ruled that the RFDCPA applied to this collection activity.  This was the case even though the foreclosure had not completed.  The facts presented in the instant case center not on foreclosure proceedings,  but Defendant's conduct involved its attempts to collect on a debt.

In another similar case, the Northern District of California also rejected Defendant's argument.  *See Reyes v. Wells Fargo Bank, N.A.,* 2011 WL 30759, at

*19, f.n. 8 (N.D.Cal. Jan. 3, 2011).  "Thus, a mortgage servicer may be a "debt collector" under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act."

In yet another similar case, *Selby v. Bank of America* 2010 WL 4347629 at *3 (S.D. Cal. 2010), Defendant GMAC Mortgage argued that because the loans in question were secured by investment properties, Plaintiff could not  allege that the loans were "primarily for personal, family, or household purposes." However, the nature of the security does not control whether the money was acquired for personal, family, or household purposes. In *Selby*, Plaintiff alleged that all ten mortgage loans were "consumer obligations arising from consumer credit transactions." (SAC ¶ 6.)  The Court held that this allegation was sufficient for pleading purposes.  Further, the Court did not require Plaintiff to plead details regarding what each loan was used for.  As in *Selby,* the Plaintiff here alleges that they were extended consumer credit which was used primarily for personal, family, or household purposes.

In further support of Plaintiff's position, federal case law from various circuit courts have held that mortgage debt is in fact subject to the FDCPA, and thus also the RFDCPA, by virtue of Cal. Civ. 1788.17.

In *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, D.C. Docket No. 1:09-cv-02435-WCO (11th Cir., May 1, 2012), the court reasoned that "in order to state a plausible FDCPA claim under § 1692e, a plaintiff must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection." *Reese* at 8. The *Reese* court held that a law firm that sent "dunning" notices to homeowners in default of their mortgage on behalf of home loan lenders were debt collectors within the meaning of the

FDCPA. *Id.* at 13. This is strikingly similar to the case at bar, where Defendant placed numerous calls to Plaintiff regarding her alleged default on a home loan.

Additionally, the *Reese* court found:

> The rule [that Ellis was not a debt collector because home loans are not "debts" under the FDCPA] the Ellis law firm asks us to adopt would exempt from the provisions of § 1692e any communication that attempts to enforce a security interest regardless of whether it also attempts to collect the underlying debt. **That rule would create a loophole in the FDCPA. A big one.** In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of § 1692e by giving notice of foreclosure on the secured interest. **The practical result would be that the Act would apply only to efforts to collect unsecured debts. So long as the debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't.** A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. **A "debt" is still a "debt" even if it is secured.**

*Reese* at 11-12. See also *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 386 (7th Cir. 2010) (holding that a letter threatening foreclosure while also offering to discuss "foreclosure alternatives" qualified as a communication related to debt collection activity within the meaning of § 1692e); *Wilson v. Draper & Goldberg, P.L.L.C.,* 443 F.3d 373, 376 (4th Cir. 2006) ("[The] 'debt' remained a 'debt' even after foreclosure proceedings commenced."); *Piper v. Portnoff Law Assocs., Ltd.,* 396 F.3d 227, 234 (3d Cir. 2005) (holding that a collection letter's threat to execute a lien if payment is not made on a debt "does not change [the law firm's] communications to the [debtors] into something other than an effort to collect that

debt"); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 117 (2d Cir. 1998) (holding that a notice sent in connection with eviction proceedings was a communication related to debt collection because the noticed aimed "at least in part to induce [the debtor] to pay the back rent she allegedly owed").

### C.   Plaintiff's Rosenthal Act Cause of Action is Well Plead

In *Baker v. Citibank* (South Dakota, NA, 13 F. Supp. 2d 1037 (S.D. Cal. 1998) a federal court looked to the adequacy of a Plaintiff's pleadings in the face of a motion for judgment on the pleadings under the RFDCPA.  *See id.*  The debt collector claimed that Plaintiff's pleadings were so inadequate that the debt collector should be entitled to judgment as a matter of law.  *See id.*  In denying the debt collector's motion, the *Baker* court found the allegations raised by the plaintiff to be sufficient despite the fact that these allegations merely referred to a violation of a specific section of the RFDCPA.  *See id.* at 1045.   The *Baker* court noted:

> Plaintiff alleges that California Financial, "acting as the agent for Defendant Citibank, continued to contact [the plaintiff] by telephone and through threats and demanded payment of the alleged debt for the purpose of harassing [the plaintiff] into paying a debt not rightfully hers." (1st Am.Compl.¶ 68.) This assertion also alleges a violation of the RFDCPA.  **In sum, Plaintiff has made more than enough allegations to allege a violation of the RFDCPA**. Accordingly, the Court denies Citibank's Motion for Partial Judgment on the Pleadings.

*Id.* at 1045 (emphasis added).

Contrary to Defendant's unsupported assertions, there is simply nothing ambiguous or uncertain about the nature of Plaintiff's pleading that would prohibit Defendant from answering Plaintiff's FAC.   Plaintiff's FAC pleads

facts supporting specific violations of very specific sections of the RFDCPA. The Defendant committed precisely the exact acts that are prohibited by the RFDCPA, and yet Defendant seeks to persuade the Court to believe that deceitful debt collection practices are permitted by the RFDCPA when a mortgage debt is at issue. If allowed, Defendant's theory would pose devastating equal protection claims and cannot be reconciled with the plain language of the RFDCPA without actually rendering the law inapplicable to those with mortgage debt, as opposed to other debtors.  In that event the RFDCPA would be carefully undermined by financial institutions such as the Defendant.

The facts as alleged by Plaintiff properly state a cause of action under the RFDCPA and are not subject to dismissal as a matter of law.  It cannot be said under the least sophisticated consumer standard that a court should determine, as a matter of law, what constitutes an unreasonable number of contacts to a debtor to constitute a violation of the RFDCPA. Defendant ignores the majority of courts throughout the country recognizing that intent to annoy, abuse, or harass may be inferred by examining the nature and frequency of debt collection calls. *See Meadows v. Franklin Collection Service,* 2011 WL 479997 (11th Cir. Feb. 11, 2011); *Holland v. Bureau of Collection Recovery,* 2011 WL 3489111, Civ. No. 8:10-cv-2632-T-26TGW (M.D. Fla. Aug. 2, 2011) (recognizing that a debt collector's intent to annoy, abuse, or harass a consumer may be inferred by examining the nature and frequency of the debt collection calls and that answering the phone is not necessary for there to be harassment); *U.S. v. Central Adjustment Bureau, Inc.,* 667 F. Supp. 370, 376 (N.D. Tex. 1986), *aff'd,* 823 F.2d 880 (5th Cir. 1987) (finding harassment where debt collector made as many as four to five telephone calls to the same debtor in one day); *Bingham v. Collection Bureau, Inc.,* 505 F. Supp. 864, 873 (D. N.D. 1981) (a single subsequent call could constitute harassment under § 1692d(5) regardless of the content of the

call); *Williams-Platt v. Bureau of Collection Recovery,* Civ. No. 09-3609, (D. Minn. June 15, 2011) ("intent may be inferred from the volume and pattern of calls made by a debt collection agency"), *adopted by* 2011 WL 2622379 (D. Minn. July 5, 2011); *Young v. Asset Acceptance, LLC,* 2011 WL 1766058, at *3 (N.D. Tex. May 10, 2011) citing *Kerwin v. Remittance Assistance, Corp.,* 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008) ("[t]he nature of telephone calls, including their frequency, substance, or the place to which they are made, provides grounds to infer a debt collector's intent to annoy, abuse, or harass without any other evidence of the debt collector's motive in calling"); *Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847, 852 (W.D. Tenn. 2010) citing *Pugliese v. Prof'l Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010); *Brandt v. I.C. System, Inc.*, Civ. No. 8:09-cv-126-T-26MAP, 2010 WL 582051 at *3 (M.D. Fla. July 6, 2010) (finding a genuine issue of material fact about whether a defendant's repeated telephone calls demonstrate an intent to abuse or harass); *Majeski v. I.C. Sys., Inc*., Civ. No. 08 CV 5583, 2010 WL 145861, at *3 (N.D. Ill. Jan.8, 2010) ("Actionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages") (citations omitted); *Prewitt v. Wolpoff & Abramson, LLP,* Civ. No. 05-CV-72FS, 2007 WL 841778, at *2-3 (W.D.N.Y. Mar.19, 2007) (finding a genuine issue of material fact about whether repeated telephone calls demonstrate an intent to annoy, abuse, or harass)); *Valentine v. Brock & Scott, PLLC*, 2010 U.S. Dist. Lexis 40532 *11 (D. S.C. 2010) (allegations that the collector  called Plaintiff eleven times over a period of nineteen days, with two calls occurring on the same day to be sufficient to state a claim for relief); *Krapf v. Nationwide Credit, Inc.,* 2010 WL 2025323 (C.D. Cal. 2010) (call history provided evidence of intent to annoy, harass, or abuse); *Joseph v. J.J. Mac Intyre Companies, LLC.,* 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002)

("[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls"); *Kuhn v. Account Control Tech., Inc.,* 865 F. Supp. 1443, 1453 (D. Nev. 1994) (six telephone calls in twenty-four minutes constituted harassment in violation of § 1692d(5)); *Kelemen v. Professional Collection Systems*, 2011 WL 31396 (M.D. Fla. January 4, 2011) (same); and *Bassett v. I.C. System, Inc.* 2010 WL 2179175 (N.D. Ill. June 01, 2010) (same).

Moreover, other courts deciding FDCPA cases have specifically held that intent may be established by circumstantial evidence or inferred from a party's actions. *Nicholas v. Nationwide Credit, Inc.,* 2010 WL 503071, Civ. No. 09-60736-CIV (S.D. Fla. Feb. 8, 2010) citing *In re Jennings,* 553 F.3d 1333, 1339 (11th Cir. 2008) (holding that intent may be established by circumstantial evidence or inferred from a party's actions); *see also Holland v. Bureau of Collection Recovery,* 2011 WL 3489111, Civ. No. 8:10-cv-2632-T-26TGW (M.D. Fla. Aug. 2, 2011) (recognizing that a debt collector's intent to annoy, abuse, or harass a consumer may be inferred by examining the nature and frequency of the debt collection calls and that answering the phone is not necessary for there to be harassment); and *Gilroy v. Ameriquest Mortg. Co.,* 632 F.Supp.2d 132 (D. N.H. 2009) (recognizing that intent may be inferred from the frequency of phone calls).

As such, as the RFDCPA applies to mortgage debts and that Plaintiff has sufficiently plead actionable harassment on the part of the Defendant, Plaintiff respectfully requests that the Court deny Defendant's motion as to her RFDCPA cause of action.

### D.   The CLRA Applies to Mortgages

Defendant also moves to dismiss Plaintiff's CLRA cause of action based upon an erroneous position that the CLRA is inapplicable to mortgages. In so

moving, Defendant relies heavily upon *Berry* and *McKell* to support its position. However, California District Courts have rejected both *Berry* and *McKell* and have confirmed that the CLRA is applicable to mortgages.

In the matter of *Jefferson v. Chase Home Finance, LLC*, 2007 WL 1302984 (N.D. Cal. 2007), the Eastern District of California rejected the same exact argument that Defendant makes in this case. In so holding, the *Jefferson* Court stated:

> Moreover, the CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ.Code § 1761(b). Chase cited this definition in its papers, but it provided no written argument as to why the financial services allegedly offered by Chase would not fall under this description. At oral argument, Chase appeared to contend that the phrase "including services furnished in connection with the sale or repair of goods" served to limit the CLRA to such services. However, this argument fails on its face, as "including" indicates exactly that-inclusiveness-rather than an exhaustive list. Chase further argued at the hearing that the CLRA should not apply to real estate lending because that market is already heavily regulated, but Chase pointed to nothing in the CLRA that specifically excludes real estate lending. Because the CLRA must be "liberally construed," Cal. Civ.Code § 1760, this Court cannot conclude that the California Supreme Court would expand the CLRA specified exclusions or read into the CLRA exclusions that are not present on the face of the statute.

*Id*. at 3.

In the case of *Hernandez v. Hilltop Financial Mortgage, Inc.*, 622 F. Supp. 2d 842 (N. D. Cal. 2007), *Berry* and *McKell* were once again rejected. In so holding, the Hernandez Court stated:

The Court finds neither *Berry* nor *McKell* persuasive, and concludes the California Supreme Court would find that the CLRA does apply to the mortgage loans in the present case. In so holding, the Court agrees with the reasoning of several other district courts that have addressed this issue. *See Jefferson v. Chase Home Finance LLC,* No. C06–6510, 2007 WL 1302984, at *3 (N.D.Cal. May 3, 2007) (concluding that the loan transactions between a mortgage finance company and the plaintiff involved "more than the provision of a loan; they also include [the] financial services [of managing the loan].")*; Knox v. Ameriquest Mortgage Co.,* No. C05–00240, 2005 WL 1910927, at *4 (N.D.Cal. Aug. 10, 2005) (finding that, in the context of predatory lending allegations and after a review of the case law, "California courts generally find financial transactions to be subject to the CLRA.")*; In re Ameriquest Mortgage Co.,* No 05–CV–7097, 2007 WL 1202544, at *6 (N.D.Ill. Apr. 23, 2007) (stating, in dicta, that "it is not inconceivable that ... plaintiffs could prove the existence of tangential 'services' associated with their residential mortgages and establish that these transactions were covered by the CLRA.").

*Id*. at 850.  The CLRA's applicability to mortgages was once again confirmed in the matter of *Labrador v. Seattle Mortgage Company*, 2008 WL 4775239 (N.D. Cal. 2008).  In rejecting *Berry* and *McKell*, the Labrador Court stated:

Subsequent to *Knox,* both *Berry* and *McKell* were decided. These decisions, however, do not change the Court's conclusion that, were the California Supreme Court to address the issue of whether the CLRA applies to the reverse mortgage at issue in the present case, it would likely answer in the affirmative. First, the CLRA contains an explicit provision stating that it "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices ...." Cal.

Civil Code § 1760. Second, unlike *Berry,* which addressed only the extension of credit, in the present case Plaintiff has alleged that Defendant provided various services in conjunction with the issuance of the reverse mortgage. *See* Compl. ¶ 67 (stating "[t]he deceptive and fraudulent business practices employed by Defendant in the sale of reverse mortgages are 'services' " under the CLRA). This distinction is significant and has been recognized in other decisions from this District that have concluded that the CLRA applies to mortgage loans. *See, e.g., Hernandez v. Hilltop Fin. Mortgage, Inc.,* Case No. 06-7401 SI, 2007 WL 3101250, at *6 (N.D.Cal. Oct.22, 2007) (stating "unlike *Berry,* the situation in the present case involves more than the mere extension of a credit line. Instead, the circumstances here deal not just with the mortgage loan itself, but also with the services involved in developing, securing and maintaining plaintiffs' loan."); *Jefferson v. Chase Home Fin. LLC,* Case No. 06-6510 TEH, 2007 WL 1302984, at *3 (N.D.Cal. May 3, 2007) (distinguishing *Berry* and *McKell* and holding that the defendant had "failed to persuade this Court that financial services agreements related to real estate transactions are excepted from CLRA's scope"). For these reasons, the Court concludes, as it did in 2005 in *Knox,* that mortgage loans such as those in the instant action may be covered by the CLRA.

*Id*. at 5.

In following this line of case law, the CLRA clearly applies to the mortgage at issue.   Defendant's obligations are clearly more than simply extending credit and furthermore the parties' attempted home loan modification indicate as such.  Defendant was not merely extending credit, Defendant was also offering services to Plaintiff in the form of an alleged home loan modification would require the receipt, review and analysis of Plaintiff's submitted documents and financial situation as well and any necessary services and coordination with

the requisite entities to have Plaintiff's loan modification approved, confirmed and put into place.  Accordingly, Plaintiff's CLRA claim is applicable to the instant matter.

### E.    Plaintiff's CLRA Cause of Action is Well Plead

Defendant utilizes only one simple sentence to support its faulty position that Plaintiff's CLRA claim fails to state a claim.  All Defendant says to that extent is that Plaintiff's claims "lacks facts" to support the claim.  Although this scant and conclusory argument clearly fails to meet Defendant's burden as the moving party and would warrant denial on that alone, Plaintiff's claims sufficiently plead a claim under the CLRA.

Plaintiff's Complaint clearly and satisfactorily alleges that Defendant represented it was working with Plaintiff to secure a home loan modification, yet despite this, after several months and without justification or explanation, Defendant simply advised Plaintiff that such a loan modification was denied. Furthermore, after Defendant denied Plaintiff's requested loan modification, Defendant began to unilaterally deduct an additional $500.00 a month directly from Plaintiff's bank account without any further explanation but that this sum of money represented "future taxes" and refused to explain further despite Plaintiff's repeated requests.

The CLRA prohibits, amongst other things, "[r]epresenting that goods or services have sponsor ship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" (Cal. Civ. 1170(a)(5)); and [r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. (Cal. Civ. 1770(a)(14).  It cannot be said, despite Defendant's allegations to the contrary, that Plaintiff's Complaint and Defendant's alleged conduct does not sufficiently plead a colorable claim under the CLRA.  Defendant makes no

specific challenge as to the facts as alleged in the Complaint and does not specifically point to any facts or lack thereof which would warrant granting Defendant's motion as to the CLRA claim.  As such, the moving party has failed to meet its burden, Plaintiff's complaint sufficiently pleads a cause of action under the CLRA and this Court should deny Defendant's motion accordingly.

### F.    Plaintiff's IIED and NIED Causes of Action are Well Plead

Defendant seeks to dismiss Plaintiff's claims for Intentional Infliction of Emotional Distress and/or Negligent Infliction of Emotional Distress on the basis that Defendant was simply "enforcing the terms of the parties' agreement" and that Defendant owes no duty of care to Plaintiff.  Despite Defendant's scant argument, Defendant is incorrect in its position as to these claims.

Defendant focuses on the "outrageous" conduct requirement to plead a claim for IIED and seeks to minimize Defendant's conduct by claiming it merely complied with a contract between the parties.  However, Defendant fails to acknowledge the conduct alleged by Plaintiff that goes well over and beyond simple contract enforcement.  Indeed, Plaintiff alleges in her complaint that Defendant: 1) placed numerous debt collection calls to Plaintiff seeking to collect alleged past due sums of money when Plaintiff was not delinquent and that Defendant knew of this fact as the lender of the loan; 2) after several months of allegedly "working" with Plaintiff to secure a home loan modification, Defendant denied Plaintiff's modification and subsequently began automatically debiting an additional $500.00 a month from Plaintiff's bank account for "future taxes"; 3) Defendant failed and refused to substantiate what the "future taxes" were for despite repeated requests from Plaintiff and nonetheless continued to withdraw the additional sums from Plaintiff's bank account; and 4) continuing to debit the additional $500.00 from Plaintiff's bank account despite Plaintiff demanding several times, both verbally and in writing, to cease automatically debiting the

additional sum of money.

Notably, "[t]here is no bright line standard for judging outrageous conduct and " '…its generality hazards a case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshold, and standards of civility. The process evoked by the test appears to be more intuitive than analytical....' [Citation.]" *KOVR–TV, supra,* 31 Cal.App.4th at p. 1028, 37 Cal.Rptr.2d 431.) *Cochran v. Cochran*, 65 Cal.App.4th 488, 494 (1998). Here, it cannot be said, despite Defendant's contrary position, that the facts as alleged do not sufficiently plead a colorable claim of outrageous conduct. Indeed, Defendant, without authorization and despite Plaintiff's demand to stop, automatically deducted a large sum of money from Plaintiff's bank account on a monthly basis without even as much explaining to Plaintiff what the alleged "future taxes" were. Not to mention that even prior to these repeated unauthorized debits, Defendant incessantly placed collection calls to Plaintiff seeking to collect an unpaid debt when Plaintiff was not even delinquent on her account and Defendant was well aware of this fact. Plaintiff's claims and Defendant's alleged conduct thus clearly allege a plausible cause of action for IIED and NIED and Defendant's motion should be denied in this regard.

### G.     Defendant Does Owe a Duty of Care to Plaintiff

Defendant claims that Plaintiff's NIED claim fails because Defendant does not owe a duty of care to Plaintiff within the context of the facts alleged in Plaintiff's Complaint. In support, Defendant cites to *Nymark* to hold that no such duty exists to Plaintiff.

However, Defendant fails to notify this Court that several California courts, including the Central District of California, have ruled that lenders do owe a duty of care to their respective borrowers. In fact, on at least eight (8) occasions, California Courts have confirmed such a duty of care exists to borrowers such as Plaintiff. One of those courts, the Northern District of California, in the case of

*Rowland v. JP Morgan Chase Bank, N.A.*, *et al.*, Case No. 3:14-cv-00036-LB (N.D. Cal. March 12, 2014) provided a lengthy citation to at least seven (7) cases so holding:

> ...*McGarvey v. JP Morgan Chase Bank, N.A.*, No. 2:13-cv-01099-KJMEFB, 2013 WL 5597148, at *6 (E.D Cal. October 11, 2013) (denying motion to dismiss because, once it offered a loan modification and processed her application, servicer could have duty of care to deceased borrower's daughter to exercise ordinary care in processing loan modification request); *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872 (2013) (holding that there was a triable issue of material fact as to whether Chase owed Jolley a duty of care in servicing a construction loan, which was disbursed in installments depending on progress towards completion); *Trant v. Wells Fargo Bank, N.A.*, No. 12-cv-164-JM-WMC, 2012 WL 2871642, at *6-7 (S.D. Cal. July 12, 2012) (finding duty of care because lender acted outside the scope of the typical lender-borrower relationship where employees ensured plaintiffs they would receive at least a temporary modification); *Kennedy v. Wells Fargo Bank, N.A.*, No. No. CV 11-4635 DSF (PLAx), 2011 WL 4526085, at *4 (C.D. Cal. Sept. 28, 2011) (applying the six-factor test and finding that the totality of the circumstances favored finding a duty of care at the motion to dismiss stage); *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) (finding sufficient active participation by the servicer to create a duty where the defendant offered "an opportunity to plaintiffs for loan modification and to engage with them concerning the trial period plan," which was "precisely 'beyond the domain of a usual money lender'"); *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010) (finding that a servicer had a duty of care to a borrower under the *Nymark* factors).

1

2   *Id.* at 14.  In confirming that the defendant did indeed owe a duty of care to the

3   plaintiff borrower, the *Rolwand* Court held that:

4

5           The court reaches the same conclusion on the factors

6           here. First, the loan modification was intended to affect

            the Rowlands because it would have reduced their

7           mortgage payments. The Rowlands' allegations are

8           stronger than those in many of the cases finding a duty

9           of care because (at least as alleged) Chase did not just

            mishandle a loan modification application. Instead, it

10          mishandled an approved loan modification agreement

11          that Chase representatives repeatedly stated was

            "complete" and "in place." *See, e.g.,* Complaint ¶¶ 15-

12          18, 23. Second, the harm in mishandling a loan

13          modification agreement is foreseeable from the outset

14          (and Chase's alleged breaches continued even while

            Ms. Rowland reported the ongoing emotional distress

15          from Chase's delays and collection efforts). Third, the

16          injury was certain to occur in that the principal balance

17          would not be reduced, penalties would accrue, and Ms.

            Rowland reported the ongoing emotional distress.

18          Fourth, the connection between Chase's alleged

19          conduct and the injury is obviously direct and

20          immediate. Fifth, Chase's conduct would subject it to

            moral blame. Finally, as the *Garcia* court explained,

21          recent statutory enactments demonstrate "[t]he

22          existence of a public policy in favor of preventing

            future harm to home loan borrowers." *Garcia*, 2010

23          WL 1881098, at *3 (citing Cal. Civ. Code § 2923.6).

24

25  *Id*. at 15.  It is also worth noting that that Rowland Court utilized the same factors

26  as the *Nymark* Court and still found that such a duty of care exists.  As such, this

27  Court would be justified in following other California District Courts, including

28  other courts located in the Central District, and find that a duty of care exists

between the parties and deny Defendant's motion in this regard.

**H.    Plaintiff's EFTA Cause of Action is Well Plead and the Statute of Limitations Has Not Expired**

Defendant seeks to dismiss Plaintiff's EFTA claims on the basis that the applicable statute of limitations has passed.  In support of this, Defendant cites to *Wlke*.    However, the *Wike* case does not support Defendant's position as conveyed to the Court.

Plaintiff is not alleging that each and every automatic debit Defendant conducted since 2007 is in violation of the EFTA.  To the contrary, Plaintiff claims that the violative unauthorized transactions related directly to the "future taxes" are the automatic debits that Plaintiff seeks relief under.    Indeed, Plaintiff's Complaint at paragraph 8 specifically states that "…Defendant did not secure any written agreement from Plaintiff before commencing its unilateral automatic debiting of the additional sums of money for these alleged "future taxes" from Plaintiff's personal banking account."   These debits began on or around June of 2013.  Plaintiff fired her First Amended Complaint on April 17, 2014, thus within the one year of Defendant's June 2013 unauthorized automatic debits for the additional sums of money.

Thus, Defendant's position is essentially that Plaintiff's EFTA claim expired **approximately five years prior to the harm that Plaintiff seeks redress for under EFTA**.  This simply cannot be so.  In fact, the *Wike* decision cited in Defendant's motion provides instruction and confirms Plaintiff's position that a claim for relief cannot occur into the harm is suffered.  While the *Wike* Court did confirm that the EFTA's statute of limitation begins to run at the transaction date of the first violative transaction, the *Wike* Court also stated that:

> *Third*, the practicalities of these transactions support
> this interpretation. **How can a consumer learn of a**

**noncompliant transfer-and know that the time for protecting her rights is running-until the transfer takes place?** Say a telemarketer sets up a string of recurring future transfers from a consumer to itself and does so without obtaining the consumer's consent. It is only when the first transfer occurs that the consumer will find out what happened, and it thus is only then that the consumer will have any reason to vindicate her EFTA rights.

Some consumers, it is true, may know about an arranged transfer, even an improper one, before it occurs. But the statute offers no handhold for creating two accrual dates, one for consumers who know that an improper transfer has been arranged and another for those who do not.

In this setting, moreover, severing the statute-of-limitations trigger from the consumer's cause of action would lead to a peculiar result. **If the limitations clock starts when a payee arranges a future transfer, but the plaintiff cannot sue until a transfer occurs, then the payee could violate EFTA with impunity. As long as the payee sets up transfers that will occur at least a year in the future, the plaintiff's time to file suit would run out before he has a claim to bring.**

*Wike v. Vertrue, Inc., et al.* 566 F.3d 590, 593-594 (6th Cir. 2009)(emphasis added). The instant case is exactly the situation that the *Wike* Court warned about. Here, Defendant began to automatically debit Plaintiff's bank account for a sum that Plaintiff had never provided authorization and in fact, Defendant continued to transact these unauthorized debits even after being instructed to cease by Plaintiff both verbally and in writing. It does not stand good reason to hold that Plaintiff's EFTA claim for harm caused in June 2013 and continued for several months thereafter would be barred. As the *Wike* Court astutely pointed out and questioned, how could Plaintiff have brought her EFTA claims in 2008 as

Defendant suggests when the harm which creates the alleged liability did not occur until five years thereafter?  It simply is not feasible that Plaintiff could have foreseen a violation of her rights five years into the future and brought her EFTA claim in 2008.  To accept Defendant's position would render the statute wholly superfluous.  Thus, this Court should deny Defendant's motion in this regard.

## I.   Defendant Failed to Comply with Local Rule 7-3 and Its Motion Should be Denied for Such Failure

Local Rule 7-3 for the Central District of California states as follows:

> In all cases not listed as exempt in L.R. 16-12, and except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4) and applications for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion shall first **contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion.** If the parties are unable to reach a resolution which eliminates the necessity for a hearing, counsel for the moving party shall include in the notice of motion a statement to the following effect:
> **"This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)**."

(emphasis added).   Here, however, Defendant's blatant disregard for this District's Local Rules warrants denial.  First, notably absent from Defendant's LR 7-3 certification is the date on which the meet and confer took place.  This is because so such meeting ever did take place.  Defendant's counsel simply left a voicemail message for Plaintiff's counsel on May 20, 2014 and only three (3) days later (in violation of LR 7-3's seven day requirement) filed the motion.

In a quite similar case, Judge David O. Carter of the Central District of California denied a motion for summary judgment due to the defendant's failure to comply with LR 7-3.  In so holding, Judge Carter stated:

> The Court finds that Defendant's counsel failed to comply with Local Rule 7–3. While Defendant's notice of motion states that the "motion is made following the conference of counsel pursuant to Local Rule 7–3", the date on which the conference of counsel took place, which is *required* under the Local Rule, is omitted. The declaration of Mark Potter in opposition to Defendant's motion suggests that the conference of counsel, in the form of a mailed and faxed letter, was initiated on December 19, 2011, *a mere three days* before the motion was filed. Although the Chilleen Reply Declaration suggests that the parties had ongoing discussions that should have put Plaintiff on notice that this motion was forthcoming, counsel does not provide any details regarding the dates or substance of these purported conversations. Moreover, "conversations about the merits of Plaintiff's claims" do not equate with discussions regarding a contemplated motion. Counsel also does not indicate than any such conversations were held in person, which, while not required, is *preferred* under the rule. Based on this record the Court cannot conclude that correspondence sent three days before the filing of the motion constitutes substantial compliance with Local Rule 7–3.

*Singer v. Live Nation Worldwide, Inc.*  2012 WL 123146 *2 (C.D. Cal. 2012). Just as the defendant in Singer did, and in fact the Singer defendant appears to have made even more attempts to meet and confer, Defendant completely failed to adhere to the District's local rules.  The parties did not have a meet and confer regarding Defendant's motion, did not discuss the case merits or even exchange written positions.  Defendant simply left a voicemail message and filed its motion

three days later.  Such disregard for the local rules and procedure warrants a denial of Defendant's motion.

### III.    CONCLUSION

For the reasons argued *supra*, Plaintiff's Complaint sufficiently pleads facts to bring a cause of action against Defendant for all claims asserted. Plaintiff has clearly and concisely pled facts that put the Defendant on notice of the relief sought and the grounds for such.  Neither the United States Supreme Court nor the Federal Rules of Civil Procedure require anything more.  Accordingly, this Court should deny Defendant's Motion to Dismiss.  In the alternative, Plaintiff hereby requests Leave of Court to file a Second Amended Complaint.


Respectfully submitted this 9th day of June, 2014.



By:    /s/ Todd M. Friedman
       **Todd M. Friedman**
       **Law Offices of Todd M. Friedman, P.C.**
       **Attorney for Plaintiff**

# PROOF OF SERVICE

I, Todd M. Friedman, state the following:

I am employed in Los Angeles, California; I am over the age of 18 and am not a party to this action; my business address is 324 S. Beverly Dr., Ste. 725, Beverly Hills, CA 90212.  On June 9, 2014, I served the following documents:

**Opposition to Motion to Dismiss First Amended Complaint**

On the parties listed below:

Melissa M. Coyle
ANGLIN, FELEWELLING,
RASMUSSEN, CAMPBELL &
TRYTTEN LLP
mcoyle@afct.com
Attorneys for Defendant


By the following means of service:

[X]   **BY ELECTRONIC CASE FILING:** I filed the submitted the document listed above via the court's Electronic Case Filing (ECF) system which provides electronic mail (email) service of the listed document directly to the party listed above to his/her "email address of record."


[X]   **STATE:** I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on June 9, 2014, at Beverly Hills, California.

By:  /s/ Todd M. Friedman
                    Todd M. Friedman